## CREVELING'S APPEAL.

Where part of the consideration for the conveyance of real estate was a promise to convey other real estate, a bill in equity will not lie to cancel the deed on the ground that the promised conveyance was not executed.

A failure to keep a promise is not a fraud.

Appeal from Common Pleas of Columbia County. In Equity. No. 218 January Term, 1882.

The facts of the case are set out in the opinion of the Court below, delivered May 7, 1880, per

ELWELL, P. J.:

In order to a clear undestanding of the matters in controversy between these parties, a statement of the uncontroverted facts which are either admitted in the pleadings or established by undoubted testimony seems to be necessary before proceeding to consider the conclusions of the master which are the subject of exceptions on the part of the defendant. In tha order of events the undisputed facts are as follows:

On the 6th day of April, 1862, Benjamin F. Reighard, the defendant, and his wife, Mary E., by deed duly acknowledged and delivered to Moore Creveling, conveyed to him a house and lot in Scott Township, called in the plaintiff's bill, "A certain house and lot in Espy." At the same time Reighard

sold to Creveling other property and took from him a bond for \$9,290.90, and a mortgage upon the property to secure the payment thereof. The mortgage was recorded on the same day, but Mr. Creveling has never caused the deed to him to be recorded. He took immediate possession of the property and has continued to occupy it to the present time.

On the 22nd of July, 1874, Moore Creveling, being the owner of a farm near Espy, containing 258 acres, joined with his wife, the plaintiff here, in a deed to Thomas Creveling, Jr., conveying the farm to him for the consideration, as expressed in the deed, of \$31,250. Thomas Creveling, Jr., at once executed a deed to Mrs. Creveling, the wife, for the same with the same consideration stated. No consideration was in fact paid. It was a gift or voluntary conveyance by the husband to the wife through the intervention of a trustee.

At the time when this conveyance was made there existed debts against Moore Creveling to the amount of at least \$4,000 against the farm. These debts continued to exist and others were contracted, making a total of at least \$9,000 by the 19th of July, 1875. One judgment was entered on that day, one on the next day ; an arbitration was then pending and a lien for \$2,518.75 was obtained by an award made twelve days thereafter, and within the next six months judgments were obtained to the amount of \$8,000 and upwards, and in a little more than a year thereafter the liens obtained amounted to upwards of \$16,000 besides the mortgage of \$9,200 and interest due to Mr. Reighard, as before stated.

On the 19th of July, 1875, Moore Creveling and wife, by deed, conveyed to B. F. Reighard one hundred acres part of the two hundred and fifty which had been deeded to Mrs. Creveling for a consideration therein expressed of \$12,500. It is at this point the controversy of the parties begins. The plaintiff, by her bill, seeks to have a re-conveyance of the land described in that deed. She alleges that the consideration of the deed was the agreement of the defendant to convey to her the title of the Espy property and to cause the mortgage thereon to be cancelled. The answer admits that part of the allegation which alleges that the mortgage was to be satisfied, and avers that as part of the consideration the defendant

was to and did deliver up to Moore Creveling a note of $1,100 which he had against him above the amount of the debt secured by mortgage, and denies that he was to convey the title to the Espy property to Mrs. Creveling.

The master has found that the note thus delivered up was part of the consideration and the evidence clearly establishes the truth of the answer in that matter. In regard to the alleged agreement to convey the title of the Espy property, the master finds that on the evening before the deed was made to Reighard, now sought to be cancelled, a parol agreement was made in which Reighard promised to convey the lot, satisfy the mortgage and deliver up the note. He has also found that at that time the defendant could have complied with the parol contract by securing to Mrs. Creveling a good and sufficient title to the Espy lot, but that through his default it became impossible to do so by reason of the liens which accumulated against Moore Creveling. The whole finding of the master seems to go upon the ground that a parol agreement was made which was complied with by Mrs. Creveling, and that at *that time* the defendant, after obtaining the deed, declined to perform his part of the contract. The parol agreement was of no binding force between the parties and is of no moment in the consideration of the case further than it may afford assistance in ascertaining what was the contract at *the closing up of the business* at the time of the delivery of the deed from Mrs. Creveling to Reighard.

It was known to all the parties that the title to the Espy property was not in Mr. Reighard but in Moore Creveling. The plaintiff's bill alleges that such was the fact, and in order to show that it was in the power of the defendant to transmit that title to Mrs. Creveling, it is alleged that Moore Creveling was willing to convey the title to Reighard or his wife, and stood ready and demanded that it be done on satisfaction of the mortgage.

The master finds that the evidence does not show that the proposition was made to re-convey the Espy property by Creveling and wife to Reighard, and yet he finds that Reighard could have secured a good and sufficient title to Mrs.

Creveling, and that by his default it became impossible to do so by reason of liens accumulating against Moore Creveling. But the report fails to show *how* it might have been accomplished with the title outstanding in Moore Creveling, who was willing to *do nothing* but destroy the paper which was the evidence of his title. The allegation in the bill that he was willing to convey the title of the Espy lot to Reighard that he might convey it to Mrs. Creveling is not sustained by the evidence, nor by the report of the master.

It was clearly not the agreement of the parties that Reighard should perform his part of the agreement, whatever it was, simultaneously with the execution of the deed to him. It was known to all parties that Mrs. Reighard was at home in Union County, and therefore the mortgage could not then be satisfied. The plaintiff's bill alleges that the consideration of her deed was the *promise* made by the defendant to perform on his part, and the evidence on her part is that a deed was *to be made out* and sent over to Mifflinburg to be executed at a future day soon. It appears to me from all the evidence in the case, that the reasonable construction of this agreement is that this deed was to be executed upon the title being re-conveyed to Reighard so that he would have a title to convey. The master has found (a matter denied in the answer) that the defendant did agree to convey the title of the house and lot to Mrs. Creveling.

Upon careful consideration of all the evidence, I do not think it justifies the conclusion that the parties intended that he should be bound to convey any other or better title than such as Moore Creveling might convey to him. The proposed arrangement, if carried out, would have conveyed *no* title And if Creveling had conveyed to Reighard he would have held the title merely as a trustee to convey to Mrs. Creveling. For all honest purposes Mr. Creveling might just as well have conveyed his title to his wife by any other trustee as by Mr. Reighard. That mode of conveying real estate by a husband to a wife was not unknown to them.

The allegation in the bill that the defendant refused to receive the title from Creveling in order that he might convey

it to her is denied in the answer, and is without support in the
evidence.

The bill does not charge the defendant with fraud in
*obtaining* the deed from the plaintiff. It charges that the plain-
tiff believes that he is falsely and fraudulently *withheld* the
title of the Espy property when it might have been conveyed.
This evidently has reference to the fact that the defendant
refused to make a second deed for the Espy lot, while the
title, which he had before conveyed, was outstanding.

Instead of acting fraudulently in the matter, it would
appear that he acted both prudently and honestly, even though
his contract was to make such a deed. If he and his wife had
executed a quit claim deed, it would have had no other effect
than to release the mortgage, which was subsequently
attempted to be done by the entry of satisfaction. If he had
executed the deed which was presented to him by Moore
Creveling, as the agent of his wife, sometime after the execu-
tion of the deed from Mrs. Creveling, he would *at once* have
been liable for a breach of the contract implied by the words
"grant," "bargain" and "sell" therein contained. The only
remedy which Mrs. Creveling would then have had, even if
the intention was to require from Reighard a good title for
the Espy lot would have been an action of covenant to recover
damages for the breach of covenants contained in the deed.
She would have been better off than she is now. For if Reig-
hard, at the time of receiving his deed, was to cancel the
mortgage, deliver up his obligation and procure from Moore
Creveling the title and convey it to her, she has her remedy
at law for damages for the non-performance of the contract.
But if the understanding was that Moore Creveling was to
convey to him, in order that he might by that means pass the
title to Mrs. Creveling, then the deed required of him with
the covenant therein contained that he had done no act to
affect his title, was not such as he had agreed to give, and he
was guilty of no fraud in refusing to execute it.

It is complained that by reason of such deed not having
been made, the Espy property became encumbered with
judgments to a large amount against Moore Creveling. This

complaint is clearly groundless, for if the required conveyance had been made, these judgments would have been liens all the same. If there was fault anywhere in not having the convey- ance of the Espy property made in a manner to prevent liens it rested upon Creveling and wife and not upon Reighard.

The master has failed to find definitely when the deed that was to be sent to Reighard for execution was in fact taken by Moore Creveling. He seems inclined to the opinion that it was in July, 1875. I am of opinion that the weight of evi- dence is that it was not until July or August, 1876, that the deed was presented to the defendant for execution.

The facts detailed by the witnesses clearly show that it was the Centennial year when Mr. Creveling was at Mifflinburg with the deed. There is conflicting testimony upon that sub- ject, but it is mainly between Mr. Creveling and some five witnesses, his testimony in respect to almost every particular differing from that of the others. It was on the occasion of this visit to Mifflinburg, and in reference to this business that Mr. Creveling states the fact that he was embarressed and had become involved in debt by reason of endorsing for others. And it was no doubt that fact which induced the advice to Mr. Reighard in the presence of Mr. Creveling that he, Reig- hard, would be likely to get into trouble if he consented to destroy his deed to Creveling and make another deed to his, Creveling's, wife.

But, taking the most favorable view of the case for the plaintiff, she shows no right to rescind the contract, nor to call upon a Court of Equity to decree a re-conveyance of the farm or a cancellation of her deed. At most her complaint is that the defendant did not perform his promise. This is clearly not sufficient to entitle her to the decree recommended by the master.

It would be going very far to hold that a man may be relieved from his deed by proof that when it was made promises were held out to him that were not performed. Fraud, it is true, avoids all contract, but fraud consists in false representations of things of facts. But a *promise* is not in itself a deceitful representation. If there was no wrong

3 Wa 25

done when the title passed out of the grantor, a failure to perform the promise can not revert a title after it has been diverted. Performance may have been intended when the promise was made, per Strong, J.: Grove vs. Hodges, 5 Smith, 519. As to one, the obligation was fulfilled, the contract was executed when it was made. As to the other party, it remains executory. A consideration may be either something done or a promise of itself, id. 516; Thompson vs. Dickason, 2 Kernan, N. Y., 364. On this ground alone I would hold that the plaintiff is not entitled to a decree of re-conveyance.

There are other grounds upon which such a decree must be refused in this case. The plaintiff is not entitled to rescind the contract on her part unless she can put the defendant in *statu quo*.

In an action to recover back anything on the ground of a rescission of a contract, the first thing to be done after showing that the plaintiff parted with the thing in pursuance of the alleged contract, is to show that the plaintiff has rescinded the contract by doing or offering to do all that was necessary and reasonably possible to restore the parties to the condition in which they were before the contract, and then to show that he had good ground to rescind; Pearsoll vs. Chapin, 8 Wright, 12. Application for a rescission must usually be made as soon as the cause for a rescission is discovered. And the Court will not rescind a contract unless it can put the parties in *statu quo*. This principle of law and equity is too well settled to require the attention of further authorities on that point. Its application to the facts of this case leaves the plaintiff without a single point of equity to stand upon. The surrender up of the note of Moore Creveling of $1,100 was part of the consideration to Mrs. Creveling to the deed. Whether that was of any benefit to Mrs. Creveling or not is not important. It was a loss to Mr. Reighard with the assent of Mrs. Creveling. It was, in fact, part of the consideration for the deed which the plaintiff now seeks to have cancelled. One who seeks equity must do equity. And where a party is entitled to rescind, it must be done promptly as soon as the fraud or other cause of rescission is discovered.

In this case nearly three years elapsed after all the facts were known to the plaintiff before she filed her bill. And she seeks (now the note of her husband having been delivered up and the mortgage satisfied by Mrs. Reighard, amounting, with the note and interest to the consideration mentioned in her deed) to compel a re-conveyance of the land described in her deed.

The master finds that Reighard should have neither delivered up the note nor satisfied the mortgage. Why not? He had agreed to do both and actually as part of the transaction delivered up the note. It is argued by counsel for the plaintiff that Creveling was and is insolvent, and that his note was worthless and therefore the plaintiff was not bound to return it before she filed her bill. The rule that what is wholly worthless need not be returned, does not apply to a promissory note. Besides it does not appear but that this note by vigilance exerted at once might have been secured against the maker.

The ground upon which Courts of Equity proceed in rescinding or cancelling executed contracts is much more narrow and to be more carefully trodden than that upon which they refuse specific performance of unexecuted contracts; Nace vs. Boyer, 6 Casey, 109.

Cancelling an executed conveyance is the exertion of a most extraordinary power in Courts of Equity, and when asked for on any ground it will not be granted, unless the ground of its exercise most clearly appears. In such cases the Court simply declines to exercise its jurisdiction and leaves the parties to their legal remedies whatever they may be; Graham vs. Pancoast, 6 Casey, 97. There must be fraud, mistake, turpitude of consideration or other circumstances entitling the plaintiff to relief or the Court will not order a rescission of an executed contract; Stephens' Appeal, 6 Norris, 207.

Relief will not be granted when the evidence is loose or contradictory; open to doubt or to opposing presumptions. The proof must be such as will strike all minds alike as being unquestionable and free from reasonable doubt; Edmond's Appeal, 9 Smith, 220.

Here the evidence is contradictory upon material points, and in several important particulars fails to establish material allegations in the bill, as I have already stated. The views already expressed render it unnecessary to do more than briefly to consider the exceptions to the report of the master.

The allegations in the answer that part of the consideration for the farm was the surrendering up of a note of $1,100 against Moore Creveling was clearly sufficient to inform the plaintiff that the defendant relied upon that fact as part of his defense. The plaintiff had failed to set forth the fact in her bill. The manner of stating the fact in the answer was not objected to and evidence was given upon both sides in accordance with the answer. The master was in error in holding that the evidence on that subject could not be considered.

The finding of the master is to the effect that the defendant agreed to convey a good title to the Espy property, free from incumbrance, and then satisfy the mortgage that was upon it. Whereas the bill in connection with the evidence shows that at most he was to convey only such title as he should receive from Moore Creveling. To the extent that he omitted this clearly implied qualification he was in error and the exception is so far sustained.

The testimony of the defendant throughout is irreconcilable with the allegation of the plaintiff that he was bound to make her a good title to the Espy lot.

It was a material fact in controversy whether the time when the deed in blank for the Espy property was sent to Mr. Reighard for execution was in 1875, in July, or in 1876, in July or August. The plaintiff's evidence was that the deed was to be prepared and taken or sent to Reighard in Mifflinburg. If it was not sent until 1876, the defendant was not responsible for the entry of liens against Moore Creveling between July 19, 1875, and the time the deed was presented to him.

Mrs. Creveling testified that the deed was to be first made and then the mortgage satisfied. Mr. Creveling, in an indirect way, says such was the contract. The defendant denies this

both in his answer and in his testimony. It is not averred as the fact in the plaintiff's bill. The oath of Mrs. Creveling and her husband I consider as the oath of one witness against the denial of the defendant on oath, and therefore hold that the fact is not established.

I am of the opinion that the remedy of the plaintiff, if there had been a breach of contract on the part of the defendant, is by an action at law. The contract on her part was fully executed. It was in part executed at the time by the defendant, and it is to be presumed that the subsequent satisfaction of the mortgage was intended to be in fulfillment of the contract.

I am therefore of the opinion that the plaintiff has failed to establish a case which will justify a Court of Equity in making the decree recommended by the master.

This case came on to be heard and was argued by counsel, whereupon and upon due consideration thereof, it is ordered, adjudged and decreed that the bill of the plaintiff be dismissed without prejudice, and that the plaintiff pay the costs.

---

Mary Creveling then appealed to the Supreme Court.

*A. C. & H. E. Smith* and *Charles R. Buckalew, Esqs.*, for appellant, argued that a Court of Equity had jurisdiction; Kirkpatrick vs. McDonald, 11 Pa., 393; Kaine vs. Weigley, 22 Pa., 183; Wesley Church vs. Moore, 10 Pa., 273; Yard vs. Patton, 13 Pa., 282; Bank of Kentucky vs. Schuylkill Bank, Parsons' Eq. Cases, 220; Bank of Virginia vs. Adams, 1 Parsons' Eq. Cases, 541. A Court of Equity will cancel an agreement obtained by fraud; Graham vs. Pancoast, 30 Pa., 98; Bishop vs. Reed, 3 W. & S., 261.

*E. H. & R. R. Little*, and *J. M. Linn, Esqs.*, contra, cited Hawk vs. Greensweig, 2 Pa., 300; Grove vs. Hodges, 55 Pa., 519; Yard vs. Patton, 13 Pa., 282; Davidson vs. Little, 22 Pa., 251; Nace vs. Boyer, 30 Pa., 109; Graham vs. Pancoast, 30 Pa., 97: Rockafellow vs. Baker, 41 Pa., 319; Kent vs. Silk, 5 East, 449; Grove vs. Hodges, 55 Pa., 516; Morgan

vs. McKee, 77 Pa., 228 ; Woollam vs. Hearn, White & Tudor Eq. Cases, Vol. 2, p 1027.

The Supreme Court affirmed the decree of the Common Pleas on March 12, 1883, in the following opinion,

PER CURIAM :

The opinion of the learned Judge in the Court below contains satisfactory reasons for dismissing this bill. The facts do not justify a decree ordering a re-conveyance of the farm mentioned.

> Decree affirmed and appeal dismissed at the costs of the appellant.